UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JDGLOBAL, LLC,

        Plaintiff,

v.

TECHNICAL MOLDING
MANAGEMENT SYSTEMS, INC.,

        Defendant.
_____/

No. 22-10762

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION [11]**

In this diversity action, Plaintiff JDGlobal, LLC seeks unpaid sales commissions from Defendant Technical Molding Management Systems, Inc.  The matter is before the Court on Defendant's motion to dismiss Plaintiff's first amended complaint for lack of personal jurisdiction.  (ECF No. 11.)  Plaintiff opposes the motion.  (ECF No. 13.)  Defendant has filed a reply.  (ECF No. 14.)  Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendant's motion will be decided without oral argument.  For the reasons below, the Court DENIES Defendant's motion to dismiss.

**I.    Background**

Plaintiff is a sales representative firm in the automotive industry; it is a Michigan limited liability company whose members, Jeff and Jennifer Donavon, are both citizens of Michigan.  Defendant is a tooling manufacturer that is incorporated in Ontario, Canada with its principal and only place of business in Ontario.  Keith Beneteau is the president and owner of Defendant.  Plaintiff's first amended complaint includes claims for breach of contract, seeking unpaid sales commissions in the amount of $41,248.59

1

(Count I), and a violation of the Michigan Sales Representative Commission Act, which may give rise to an award of penalty damages equal to two times the overdue commissions, not to exceed $100,000 (Count II).  (ECF No. 10.)  Defendant emphasizes that the unpaid sales commissions at issue in this case relate to tools manufactured by Defendant in Canada or through a subcontractor in China and shipped to one of its customers in Mexico.  Plaintiff, however, has submitted the affidavit of its president, Jeff Donovan, (ECF No. 13-3) who states in part the following:

> In approximately 2010, the parties entered into an agreement by which Plaintiff was to act as an independent sales representative for Defendant.  When the agreement was formed, it was discussed, understood, and agreed between Mr. Donovan and Mr. Beneteau that Plaintiff would focus its sales efforts on soliciting business primarily from customers in the automotive industry in the Detroit metropolitan area.  It was further understood and agreed that Plaintiff was permitted to solicit business and orders from other customers located throughout North America, but Mr. Beneteau was primarily responsible for calling on potential customers located in Ontario, Canada.  An estimated 75% of the business procured by Plaintiff for Defendant was obtained from customers in the automotive industry in the Detroit metropolitan area.  Most of the purchase orders for that business were issued by customers from their Michigan addresses, and most of the orders required Defendant to ship tooling or other products to the customers in Michigan.
>
> Defendant also hired one employee and at least one consultant to work in Michigan, each for a period of several years.  The employee hired by Defendant to work in Michigan as an employee sales representative was Mr. Donovan himself, and that

2

employment lasted from approximately July 2015 through June 2017. During the last few years of the sales representative relationship between the parties, an increasing number of orders solicited by Plaintiff required Defendant to ship tooling to customers outside of Michigan, but the work performed by Plaintiff relating to those sales was done at its office located in Rochester, Michigan. Throughout the term of the relationship, representatives of Defendant, including Mr. Beneteau, occasionally traveled to Michigan to meet with the Donovans to discuss business or to accompany the Donovans to meetings with Michigan customers in the Detroit area.

Plaintiff alleges that Defendant became delinquent in its payment of the sales commissions in early 2022. Plaintiff terminated the business relationship between the parties in February 2022.

## II.     Legal Standard

When considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may (1) decide the motion on the basis of affidavits presented by the parties alone, (2) permit discovery on the issue, or (3) hold an evidentiary hearing. *Theunissen v. Mathews*, 935 F.2d 1454, 1458 (6th Cir. 1991). If a court adopts the first course, a plaintiff "'need only make a prima facie showing of jurisdiction'" to defeat a Rule 12(b)(2) motion to dismiss. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). A plaintiff can satisfy this burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp.*, 282 F.3d at 887 (internal quotations and citation omitted). In reviewing a motion to dismiss under Rule 12(b)(2), the Court construes the facts in

3

the light most favorable to the non-moving party, and "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Id.* Dismissal is proper only if "all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." *CompuServe*, 89 F.3d at 1262 (citation omitted).

## III. Analysis

Defendant argues that this case should be dismissed for lack of personal jurisdiction. Plaintiff responds by arguing that Defendant is subject to both general and limited personal jurisdiction in Michigan.

To establish personal jurisdiction in this diversity action, Plaintiff must show that the Court's exercise of personal jurisdiction is both (1) authorized by "the law of the state in which it sits," in this case, Michigan, and (2) "in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen*, 282 F.3d at 888 (citation omitted).

### A. Michigan's Long-Arm Statute

Michigan's long-arm statute provides for limited personal jurisdiction over nonresident corporations if the litigation arises out of "[t]he transaction of any business within the state" or "[t]he doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort." Mich. Comp. Laws § 600.715. Michigan's statute "is broadly construed," and the "arising out of" language is "satisfied if the cause of action was made possible by or lies in the wake of the defendant's contact with the forum." *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 662 (E.D. Mich. 1996) (internal quotations and citation omitted). Likewise, "the transaction of any business includes each and every [and] it comprehends the slightest." *Id.*

4

The record here establishes that Defendant contracted with Plaintiff, a Michigan limited liability company, so that Plaintiff could provide sales representative services in Michigan on Defendant's behalf.  Because Plaintiff now alleges Defendant breached that contract, Defendant is subject to limited personal jurisdiction under Michigan's long-arm statute as long as this exercise of jurisdiction would not offend constitutional due process.  *See Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 741 (E.D. Mich. 2004) (noting that "[t]he Michigan Supreme Court has construed Michigan's Long-Arm Statute to bestow the broadest possible grant of personal jurisdiction consistent with due process") (citations omitted).

### B. Due Process Concerns

To establish that this Court's exercise of personal jurisdiction over Defendant would not offend due process, Plaintiff must show "with reasonable particularity sufficient 'minimum contacts' with Michigan so that the exercise of jurisdiction over [Defendant] would not offend 'traditional notions of fair play and substantial justice.'" *Neogen*, 282 F.3d at 889 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  In determining whether a party has sufficient contacts to support limited jurisdiction, the Sixth Circuit has established a three-part inquiry:

> First, the defendant must purposefully avail [it]self of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (internal quotations and citation omitted).

5

### 1. Purposeful Availment

Under the first prong of the inquiry, Plaintiff must show that Defendant "'purposely availed itself of the privilege of conducting activities within the forum State.'" *Neogen*, 282 F.3d at 889 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Purposeful availment "is present where the defendant's contacts with the forum state 'proximately result from actions by the defendant *[it]self* that create a substantial connection with the forum State' and where the defendant's conduct and connection with the forum are such that [it] 'should reasonably anticipate being haled into court there.'" *Id.* at 889 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contracts, or of the 'unilateral activity of another party or third person.'" *Id.*

Defendant relies on *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147 (6th Cir. 1997), and *Paglioni & Assocs. v. WinnerComm, Inc.*, No. 2:06-cv-00276, 2007 U.S. Dist. LEXIS 18612 (S.D. Ohio Mar. 16, 2007), to argue that it did not purposefully avail itself of the privilege of conducting activities in the state of Michigan. But in *Kerry Steel*, 106 F.3d at 151, the purchase agreement between the parties was "nothing more than an isolated transaction." Moreover, there was no showing that any of the defendant's employees had ever been in Michigan for the purpose of conducting business and "no indication in the record that [the defendant] intended to create an ongoing relationship in Michigan with [the plaintiff]." *Id.* In *Paglioni & Assocs.*, 2007 U.S. Dist. LEXIS 18612, at *20, the plaintiff brokered a deal between the defendant and a third party for an event

6

occurring in another state and the defendant's only contact with the forum state was due to the fact that the plaintiff happened to reside there.

Here, unlike in *Kerry Steel* and *Paglioni*, the parties had a contractual relationship that lasted over ten years.  While the underlying unpaid sales commissions stem from products that were not sold to a Michigan customer or shipped to Michigan, Plaintiff's work pursuant to the agreement included the solicitation of business on behalf of Defendant from Michigan customers.  Moreover, unlike in *Kerry Steel*, there is evidence that Defendant's president Keith Beneteau and other employees travelled to Michigan to meet with customers and representatives of Plaintiff.  Defendant also retained Mr. Donovan as a direct employee to solicit sales in Michigan from 2015 through 2017 and at least one consultant to work in Michigan for several years.  Defendant dismisses these facts as merely relating to the so-called "historical relationship" between the parties, but the Court finds these facts relevant to the question of "whether the defendant intend[ed] to establish continuing relationships and obligations in the forum state," *see Int'l Petro. Prods. & Additives Co. v. PXL Chems. BV*, No. 1:20-cv-00586, 2022 U.S. Dist. LEXIS 176951, at *30 (S.D. Ohio Sept. 28, 2022) (noting the Sixth Circuit has suggested this is "a key inquiry in the purposeful availment analysis") (internal quotations and citations omitted), as well as the duration of the relationship with the forum state, *see id.* at *30-31.[1]  Because the record indicates Defendant intended to

---

[1] To the extent Defendant notes that this Court has stated that "minimum contacts are measured at the time that the underlying acts took place," this was in the context of noting that personal jurisdiction cannot be defeated by leaving the state where the acts took place and not to suggest that contacts preceding those acts are irrelevant to the purposeful availment inquiry.  *See General Motors Corp.*, 948 F. Supp. at 663.

7

create a continuing and long-term relationship in Michigan with Plaintiff, the Court finds that Defendant purposefully availed itself of the privilege of conducting activities in the state.

### 2. Claims Arise from Contacts with Michigan

Under the second prong of the inquiry, the Court must determine whether the cause of action was "made possible by" or "lie[s] in the wake of" the defendant's contacts with the forum state or, in other words, is "related to" or "connected with" the defendant's contacts. *Air Prods. & Controls, Inc.*, 503 F.3d at 553 (internal quotations and citations omitted). The Sixth Circuit has characterized this "as a lenient standard" and has stated that the "cause of action need not formally arise from defendant's contacts." *Id.*

Defendant notes that some courts have stated that a breach of contract based on the failure to pay occurs in the state of the breaching party. *See Kerry Steel, Inc.*, 106 F.3d at 152; *Paglioni & Assocs.*, 2007 U.S. Dist. LEXIS 18612, at *21-22. But in those cases, as discussed above, the plaintiff had not shown that the defendant purposefully availed itself of the benefits of the law of the forum state. *See Kerry Steel, Inc.*, 106 F.3d at 152; *Paglioni & Assocs.*, 2007 U.S. Dist. LEXIS 18612, at *19-21. And where a contract forms the basis of a continuing relationship with the forum state that is sufficient to show purposeful availment, courts have found a cause of action for breach of that contract arises from the defendant's contacts in the state. *See, e.g.*, *Tharo Sys., Inc. v cab Produckttechnik*, 196 F. App'x 366, 371 (6th Cir. 2006); *Ohio Valley Bank Co. v. Metabank*, No. 2:19-cv-191, 2019 U.S. Dist. LEXIS 160437, at *24-27 (S.D. Ohio Sept. 20, 2019). Because Defendant purposefully availed itself of the privilege of conducting business in Michigan when it entered into an agreement with Plaintiff and

Plaintiff now alleges it breached that contract, the Court similarly finds the lenient "arising from" standard satisfied here.

### 3. Exercise of Personal Jurisdiction Reasonable

Under the third prong of the inquiry, the Court considers the following factors to determine reasonableness: 1) the burden on the defendant; 2) the interest of the forum state; 3) the plaintiff's interest in obtaining relief; and 4) other states' interests in securing the most efficient resolution of the controversy. *Air Prods. & Controls, Inc.*, 503 F.3d at 554-55 (citation omitted). Where, as here, the first two prongs of the three-part inquiry are met, "'an inference of reasonableness arises' and 'only the unusual case will not meet this third criteria.'" *Id.* at 554 (quoting *Theunissen*, 935 F.2d at 1461).

The Court does not find this to be an unusual case that would lead to a finding of unreasonableness. Defendant is a foreign defendant, but the Sixth Circuit has explicitly found the burden on a defendant from Canada much less than the burden on "most other foreign defendants." *See Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 628-29 (6th Cir. 1998). And even if it may be somewhat burdensome for Defendant to litigate in Michigan, it knew when it entered into an ongoing relationship with Plaintiff that it was making a connection with a company whose members are citizens of the state of Michigan. Moreover, any burden on Defendant is outweighed by Michigan's strong interest in resolving a dispute involving a company that is located in its state, Plaintiff's interest in obtaining relief, and the efficient resolution of this controversy. Thus, the exercise of jurisdiction over Defendant is reasonable.

In sum, Plaintiff has made a prima facie case that Defendant has sufficient contacts with Michigan so that this Court's exercise of jurisdiction does not offend

traditional notions of fair play and substantial justice. The Court, therefore, finds that it has limited personal jurisdiction over Defendant.[2]

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: December 21, 2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 21, 2022, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager

---

[2] Because the Court concludes that it has limited personal jurisdiction over Defendant in this case, there is no need to address the parties' arguments regarding general personal jurisdiction.